UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 8:24-cv-02254-CAS (JDEx) | Date | February 3, 2025 |
|---|---|---|---|
| Title | Experian Information Solutions Inc. v. Ataeva, LLC | | |

---

Present: The Honorable    CHRISTINA A. SNYDER

| Catherine Jeang | Deborah Parker | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:        Attorneys Present for Defendants:

Matthew Billeci            Ryan Hatch
Jeffrey Baltruzak            Alan Sege
                            Brian Lewis

**Proceedings:**    ZOOM HEARING RE: MOTION TO DISMISS (Dkt. 75, filed on December 27, 2024)

## I.    INTRODUCTION

On October 17, 2024, plaintiff Experian Information Solutions Inc. ("Experian") filed a complaint against defendant Ataeva, LLC ("Ataeva") asserting three claims for relief: (1) declaratory judgment pursuant to 28 U.S.C. § 2201 to determine Experian's payment obligations under its contracts with Ataeva; (2) declaratory judgment pursuant to 28 U.S.C. § 2201 to determine copyright ownership; and (3) breach of contract. Dkt. 1 ("Compl.") at ¶¶ 106-19.

On October 21, 2024, Experian filed an application for a temporary restraining order. Dkt. 10. On October 22, 2024, the Court denied Experian's *ex parte* application for a temporary restraining order and issued an order to show cause as to why a preliminary injunction should not issue. Dkt. 15. On November 5, 2024 the Court denied Experian's motion for a preliminary injunction. Dkt. 48.

On November 22, 2024, Ataeva filed its Answer and Counterclaims. Dkt. 59 ("Counterclaims"). In its Counterclaims, Ataeva asserts four claims for relief: (1) breach of contract; (2) copyright infringement; (3) unfair competition in violation of California Business and Professions Code § 17200, et seq. (the "UCL"); and (4) declaratory judgment. Counterclaims ¶¶ 73-108.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 8:24-cv-02254-CAS (JDEx) | Date | February 3, 2025 |
|----------|--------------------------|------|------------------|
| Title | Experian Information Solutions Inc. v. Ataeva, LLC | | |

On December 27, 2024, Experian filed the instant motion to dismiss Ataeva's Counterclaims. Dkt 75 ("Mot."). On January 13, 2025, Ataeva filed its opposition. Dkt. 82 ("Opp."). On January 20, 2025, Experian filed its reply. Dkt. 83 ("Reply").

On February 3, 2025, the Court held a hearing. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II. BACKGROUND

In its Counterclaims, Ataeva alleges the following:

Ataeva developed two software computer programs, the Total Annual Plastic Spend ("TAPS") product, "used to estimate a consumer's personal and business spend based on credit bureau data," and the Yield Metrics product, "used to estimate the annual interest rate of a consumer's debt, such as credit cards." Counterclaims ¶ 1. These programs are intended to assist banks and credit bureaus in their marketing efforts with customers. Id. ¶¶ 24-25. Ataeva obtained copyrights protecting these products. Id. ¶ 2.

Experian and Ataeva entered into a Master Software License Agreement for the TAPS product on April 30, 2011, amended January 6, 2014 and December 31, 2021. Id. ¶ 3 (citing dkt. 1-1 (collectively the "TAPS Agreement")). The parties entered into a Master Software License Agreement dated November 5, 2012, amended January 6, 2014 and July 29, 2022. Id. (citing dkt. 1-2 (collectively the "YM Agreement" or "Yield Metrics Agreement"). Ataeva is a small software development company and Experian is one of the United States's three credit bureaus. Id. ¶ 12. Experian is "Ataeva's only or main customer." Id.

In late 2019, Experian requested a price concession from Ataeva so that it could obtain a three-year contract "for providing non-depersonalized data" to Credit Karma, a "company who is not a Financial Institution (as that term is defined by the parties in the [TAPS Agreement and Yield Metrics Agreement (collectively "the Agreements")]) …." Id. ¶ 14. Ataeva granted the concession "providing its software and services to the new project at a dramatic discount of $20,000 per month." Id.

In 2022, as the contract between Experian and Credit Karma neared its end, "Ataeva reminded Experian not to renew or enter any ongoing agreement to provide data to Credit Karma without either being prepared to pay Ataeva in full under the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 8:24-cv-02254-CAS (JDEx) | Date | February 3, 2025 |
|---|---|---|---|
| Title | Experian Information Solutions Inc. v. Ataeva, LLC | | |

Agreements, or working out an ongoing price concession." Id. ¶ 15. Experian rejected Ataeva's offered price concession of $40,000 per month going forward. Id. ¶ 16. Instead, Experian entered into a contract with Credit Karma providing the same services from Ataeva, but "decided essentially to just stop paying Ataeva nearly at all under the Agreements." Id. ¶ 17. Experian tried to justify its under payment by reclassifying Credit Karma as a Financial Institution pursuant to the Agreements and claiming that it provides data to Credit Karma in a "'depersonalized manner.'" Id. Ataeva provided Experian with an invoice for the minimum amount Experian could have owed for what it was providing to Credit Karma, and Experian "disregarded the invoice …." Id. ¶¶ 18-19.

There are "numerous other instances," in addition to the situation with Credit Karma, "in which it appears Experian uses Ataeva and its software without reporting at all, or reporting only in part, and without paying Ataeva." Id. ¶ 19. Ataeva had information regarding underpayment for Experian's Bank of America and Visa relationships, and notified Experian of these breaches. Id. By August 2024, "after two years of Experian's stiff arming and disregarding, Ataeva noticed Experian that it would terminate the contract for material breach." Id. Experian filed this suit on October 18, 2024. Id.

Experian uses TAPS and Yield Metrics software (collectively "the Software") in its maintenance of a database of all loan obligations reported to it. Id. ¶ 23. Outputs of the Software are used along with other personal data, for example by banks, to target potential customers. Id. ¶ 24. Experian uses the Software to screen potential customers and "provide the banks only the resulting list of consumer name and address known as 'Pre-Screen' or 'Pre-Approved' in the banking industry and in Fair Credit Reporting Act and the Consumer Financial Protection Bureau's rules." Id. Experian can also provide information known as "Customer Data," which is TAPS and Yield Metrics "output data along with account balances, and risk scores and other data such as Bank or other Experian customer identifier, names, addresses, social security number, phone number, email addresses" that allow Experian's customers to make targeted marketing offers to potential clients. Id. ¶ 25. This does not classify as "depersonalized data delivery pursuant to the Agreements. Id.

Under the Agreements, Experian obtained the right to use the Software in its operating environment and sell the output to its customers, "on condition that it report the uses to Ataeva, pay royalties to Ataeva based upon the use, along with other terms and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 8:24-cv-02254-CAS (JDEx) | Date | February 3, 2025 |
|---|---|---|---|
| Title | Experian Information Solutions Inc. v. Ataeva, LLC | | |

conditions upon Experian." <u>Id.</u> ¶ 26. Ataeva provided Experian with the Software source codes. <u>Id.</u> ¶ 27.

The parties, per the Agreements, established different payment systems for different types of data delivery. <u>Id.</u> ¶ 28. The parties altered the payment arrangements through subsequent Amendments to the Agreements. <u>Id.</u> ¶ 29-30. The Agreements provided for termination if a party materially breached and failed to cure. <u>Id.</u> ¶ 31.

Ataeva "became aware of Experian's underpayment under the terms of the Agreements" in 2020. <u>Id.</u> ¶ 33. The Parties resolved the resulting dispute through the TAPS Second Amendment, involving a release of claims and a payment by Experian of $434,506.44 "representing a portion of the unpaid royalties due." <u>Id.</u> (citing dkt. 1-1 at 52-55 ("TAPS Second Amendment")).

The parties resumed their relationship, with Ataeva relying on Experian to report its revenues and uses of the Software under the terms of the Agreements, but Ataeva became aware of "new irregularities in Experian's reporting of revenues, and began an investigation." <u>Id.</u> ¶ 35.

In early 2023, Ataeva received an inquiry from Bank of America that revealed Experian had been providing Bank of America with Pre-Screen products using the Software since April 2018, but had stopped reporting this revenue to Ataeva in October 2020 and had provided no payments therefrom. <u>Id.</u> ¶ 36. By October 2023, Ataeva "became aware of even more serious lapses in Experian's reporting and payments under the Agreements," which only "came to light … through inadvertent admissions made by Experian to Ataeva …." <u>Id.</u> ¶ 37.

For example, Ataeva learned that the data being provided to both Visa and Credit Karma was not "Depersonalized Data Delivery," and thus that Experian was not paying the appropriate fees. <u>Id.</u> ¶ 38-40. Credit Karma is also not a Financial Institution under the Agreements and Experian has tried to reclassify it as such to alter its payment obligations. <u>Id.</u> ¶¶ 39-43. Experian "proposes to pay [amounts] for Credit Karma [which] have nothing to do with what Experian owes under the Agreement" and which "represent a reversal by Experian of the nature of Credit Karma and its use of the Software data." <u>Id.</u> ¶ 44.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 8:24-cv-02254-CAS (JDEx) | Date | February 3, 2025 |
|---|---|---|---|
| Title | Experian Information Solutions Inc. v. Ataeva, LLC | | |

On information and belief, Experian uses the same incorrect calculation for other customers that it has used for Credit Karma and Visa. Id. ¶ 51. Experian also provides the Software to other customers without disclosure and does not pay royalties, for example in its relationship with Santander Bank. Id. ¶ 52. Experian has also "made TAPS available in their Premier Summarized Credit Statistics[SM] and in their Experian Audiences," and "in its own or its corporate affiliates' service known as Credit Match," failing to report revenue and pay royalties owed to Ataeva in connection therewith. Id.

Through discussion with Experian, Ataeva attempted to resolve the issue from early summer 2023 to summer 2024. Id. ¶ 54. Experian refused to pay invoices sent during that time. Id. ¶ 56. On October 13, 2023, Ataeva sent a letter to Experian detailing some of the reporting errors and royalties owed. Id. ¶ 57. The parties sought to resolve the disputes, and when they could not, Ataeva filed suit in this Court, which relying on Experian's goodwill and assurance that it would reach a solution with Ataeva, Ataeva then dismissed. Id. ¶ 58.

On June 14, 2024, counsel for Ataeva provided formal notice to Experian for breaches related to Visa and Bank of America. Id. ¶ 59. At a meeting between executives, Ataeva requested full disclosure of the scope of revenues and uses of the Software, which Experian refused. Id. ¶ 60. Experian did not provide the documentation required by the Agreements when a dispute has arisen. Id. ¶ 61.

On August 7, 2024, "Ataeva gave notice to Experian under the Agreement of the material breaches related to Bank of America, Visa, and Credit Karma" (collectively the "Three Noticed Breaches"). Id. ¶ 63. Experian failed to cure the breaches within 30 days, and on September 12, 2024, Ataeva provided notice that the Agreements would terminate on September 20, 2024 at 5 p.m. Id. Ataeva granted Experian five one-week extensions and the Agreements ultimately terminated on October 18, 2024. Id. ¶¶ 64-65.

Experian has not cured its breach and continues to use the Software despite losing the right to do so. Id. ¶¶ 67-72.

## III.  LEGAL STANDARD

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 8:24-cv-02254-CAS (JDEx) | Date | February 3, 2025 |
|----------|--------------------------|------|------------------|
| Title | Experian Information Solutions Inc. v. Ataeva, LLC | | |

of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); see Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 8:24-cv-02254-CAS (JDEx) | Date | February 3, 2025 |
|---|---|---|---|
| Title | Experian Information Solutions Inc. v. Ataeva, LLC | | |

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV.    DISCUSSION

### A.    The Parties' Contentions

Experian puts forth five ways it argues the claims in this case should be narrowed. Mot. at 1. These are: (1) that the allegations that arose before the agreed upon release as of December 31, 2021 should be dismissed; (2) that the claims relating to breach of contract "for non-payment of royalties to 'other customers' beyond the Noticed Customers should be dismissed" because Ataeva did not follow the notice-and-cure procedures in the agreement; (3) that Experian cannot be liable for copyright infringement for the time when it was the exclusive licensee for the software; (4) that the claim of copyright infringement based on Experian's internal use should be dismissed because this is permitted by the agreement; (5) that Ataeva's UCL claim is duplicative of its breach of contract claim and should be dismissed. Id. at 1-2.

As to its first contention, Experian argues that the TAPS Second Amendment "released all claims between the parties related to the Agreements," and that the "release was broad, complete, concerned all claims known and unknown, and applies even if the parties learn new or different facts later on." Id. at 9. Experian argues "the parties started with a clean slate as of January 1, 2022." Id. It argues that Ataeva acknowledges this release but nonetheless make claims based on conduct prior to the release. Id.

Experian argues that Ataeva's breach of contract claims relating to "other" Experian customers must also be dismissed because the dispute "centers on Experian's payment obligations for the Three Noticed customers" and Ataeva only alleges that it gave notice pursuant to the Agreement's terms for these three customers. Id. at 10. Experian argues that Ataeva's claims against "other customers" fail because it does not allege it provided notice of breach under the procedures in the Agreement nor that it complied with the Escalation Process for disputes. Id. at 11-12. These claims also fail, Experian argues, because Ataeva's factual allegations regarding "other customers" are insufficient to state a plausible claim, because they "are wholly conclusory and lack any

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 8:24-cv-02254-CAS (JDEx) | Date | February 3, 2025 |
|---|---|---|---|
| Title | Experian Information Solutions Inc. v. Ataeva, LLC | | |

factual detail whatsoever." Id. at 12 Additionally, Experian argues the claims are "based exclusively on 'information and belief,'" even in the instance where Ataeva identifies Santander as the customer. Id. Experian argues that these allegations do not meet the plausibility standard. Id. at 13.

Next, Experian argues that the Court should dismiss the copyright infringement claim based on allegations that predate the purported termination of the Agreements. Id. at 15. Id. Before October 18, 2024, Experian argues, Ataeva has no basis to sue for copyright infringement because it agrees the Agreements were in effect. Id. Experian also argues that a copyright owner who grants a license to its material cannot sue the licensee for copyright infringement, rather it can only sue for breach of contract. Id. at 16. Experian contends that it has an exclusive license to provide the software to any third-party customer and that "Ataeva at no point alleges that Experian provided the Software to … a third party that was not permitted to receive it or that Experian used the Software for a purpose that was not allowed under the license," and that it could not make such an allegation because of the broad license granted by the Agreements. Id. at 17. Experian argues that Ataeva's claimed bases for infringement, "failure to report provision of the software to customers, list revenues, pay royalties, or provide supporting documents" are contract violations distinct from the scope of the license. Id. at 18.

Experian contends that the copyright claim should also be dismissed on its second basis, that Experian committed infringement using the Software for Credit Match, which is its own or its corporate affiliates' service. Id. Experian argues that the Agreements provide a license permitting it to use the Software for "'any purpose,'" including its own internal purposes, permitting it to use the Software for the benefit of its affiliates, and permitting it to integrate the Software with other software and materials in the way it did for Credit Match. Id. at 18-19. Experian contends that this claim is not plausible because it is also based solely on "'information and belief.'" Id. at 19.

Finally, Experian argues that Ataeva's UCL claim should be dismissed because it is duplicative of its breach of contract claim. Id. In order to state a UCL claim, Experian contends, a plaintiff must first establish that it does not have an adequate remedy at law. Id. Experian argues that Ataeva puts forth the same basis for its UCL claims as for its breach of contract claims, demonstrating it has an adequate remedy at law. Id.

In opposition, Ataeva first contends that the release at issue was limited and did not settle all claims which arose prior to January 1, 2022. Id. at 6. Pointing to the language

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 8:24-cv-02254-CAS (JDEx) | Date | February 3, 2025 |
|---|---|---|---|
| Title | Experian Information Solutions Inc. v. Ataeva, LLC | | |

of the TAPS Second Amendment, Ataeva contends that it resulted in a release of only "all claims, whether known or unknown, which arise out of, or relate in any manner to the Dispute." Id. at 7. The Dispute, Ataeva argues, was defined as "the parties' contentions regarding Ataeva's September 12, 2020 termination notice of the TAPS Agreement," thus the release does not cover all disputes related to TAPS or any disputes related to Yield Metrics. Id. at 7-8. Ataeva argues that Experian does not present any evidence that the current claims relate to the September 12, 2020 dispute. Id. at 8.

Ataeva also contends that Experian "obtained the TAPS Second Amendment through fraud," and that, accordingly, Experian's motion must fail. Id. In the TAPS Second Amendment, Ataeva argues, Experian "agreed that it 'represents and warrants that … it has no knowledge … of any Claims … under or related to the Agreement,'" when at the time of the Agreement, "Experian had already begun hiding its revenues from Bank of America that should have been disclosed under the TAPS Agreement." Id.

In response to Experian's second argument, Ataeva contends that it properly pled its claims regarding other customers besides the Three Noticed Customers. Id. Ataeva argues that Experian "engaged in a systematic pattern of miscalculating the royalties owed under the Agreements" and that it "engaged in a pattern of distributing Ataeva's Software or data therefrom without disclosing the sales under the Agreements." Id. Ataeva argues that Experian says it provides "the Software and data derived therefrom to 'numerous clients,'" indicating that it has committed additional violations. Id. at 10. Because Experian has never attempted to refute these allegations, Ataeva contends, they must be taken as true for the purposes of this motion. Id. Ataeva argues that Experian also contends that it is not misclassifying sales as "Depersonalized Data Delivery," which indicates that it is likely similarly misclassifying sales to other customers. Id.

Ataeva takes issue with Experian's argument that the claims should be dismissed because they are based on information and belief, and argues this is incorrect because Iqbal did not end the viability of information and belief pleading in a situation like this, where Experian is in possession of the relevant information. Id. at 10-11. Ataeva argues that it has sought this information and that Experian has refused to provide it. Id. Ataeva argues that Experian's case law is inapposite and that it "is entitled to discovery to determine the full scope of Experian's breaches." Id.

Ataeva next contends that the notice-and-cure procedures in the Agreements do not bar its suit. Id. at 12. Ataeva argues that it was not required to plead compliance with the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 8:24-cv-02254-CAS (JDEx) | Date | February 3, 2025 |
|---|---|---|---|
| Title | Experian Information Solutions Inc. v. Ataeva, LLC | | |

Agreements' provisions because they did not survive termination of the Agreements. Id. Even so, Ataeva argues, it did plead compliance and "Experian did everything in its power to cover up, rather than cure, its misconduct." Id. Ataeva argues that the Agreements do not require the parties to re-notice a dispute for additional breaches revealed in discovery. Id. at 13. Ataeva contends that Experian's request to the Court for a declaratory judgment finding that Experian does not owe Ataeva any money and that it is has fully performed amounts to a recognition that "the Court ha[s] a right to adjudicate all outstanding fees owed under the Agreements." Id. at 13-14 (emphasis omitted).

Ataeva next contends that Experian's arguments that the copyright claims must be dismissed are "legally and factually erroneous." Id. Ataeva first argues that it did not transfer its intellectual property rights to Experian because the Agreements "expressly provide that '[a]ll rights, title, and interest in the Licensed Materials will remain the exclusive property of Ataeva …'" and Experian acknowledged that it obtained no ownership rights in the materials. Id. (citing Agreements §§ 2.2(i), 6.1(i)). Ataeva argues that it is undisputed that Experian reproduced and distributed all or some of the Software and resultant data without reporting these uses and revenues, and that thus either these uses were within the scope of the Agreements and not reported, a breach of contract, or they were not within the scope of the licenses, a copyright violation. Id. at 16. Ataeva contends that "[n]one of the laws cited by Experian stands for the proposition that a limited exclusive right to use copyright material only for certain purposes constitutes a transfer of copyright." Id. at 17. Ataeva argues that Experian's argument that the remedy is in contract and not copyright "assumes the point at issue, which is whether Experian's use, reproduction and distribution of all or parts of [the] Software including data derived therefrom was done within the Agreements' license." Id.

As to Experian's own internal use of the Software, which it contends is protected by the Agreements' licenses, Ataeva argues Experian admits this is a question of fact, but argues that "the issue is so one sided that it may be determined on a motion to dismiss." Id. Ataeva argues that Experian has not shown, "as a pure matter of law that the Agreements license Experian the right to use Software without reporting, and for free, so long as Experian charges its fees to consumers directly." Id. at 17-18. Ataeva argues that the licenses are limited, including in scope to "'United States Consumer Data,'" and "Experian has not demonstrated that any—let alone all—if its 'internal' uses meet this limitation." Id. at 18. The "'any purpose'" language in the Agreements, Ataeva argues, only pertains to use of the Licensed Material and Source Code, not the sale of TAPS and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 8:24-cv-02254-CAS (JDEx) | Date | February 3, 2025 |
|---|---|---|---|
| Title | Experian Information Solutions Inc. v. Ataeva, LLC | | |

Yield Metrics products, and that even use of the Licensed Material and Source Code are limited.  Id.  Ataeva argues that Experian "does not attempt to demonstrate that any of [its] uses—let alone all of them—comply with these limitations."  Id.

Ataeva argues that its UCL claim is not duplicative of its contract claim because what is actually required for a UCL claim is that Ataeva does not have an adequate remedy at law without the claim.  Id.  Ataeva argues that its UCL claim contains allegations that "go beyond simple violations of the Agreements," including allegations that Experian hid uses of and revenue from the Software from Ataeva in order to prevent Ataeva from discovering the underpayments.  Id.  Ataeva contends that it does lack an adequate remedy at law because the equitable relief it requests "is not equivalent to money damages for breach of contract, and it extends to correct Experian's misconduct after the termination of the agreements."  Id.

Finally, Ataeva argues that if the Court grants Experian's motion, it should be given leave to amend.  Id. at 21-22.

In reply, Experian reiterates the five reasons the Counterclaim should be dismissed and argues that Ataeva fails to contest the key issues raised in its motion.  Reply at 1-2.  Experian reiterates its argument that all claims before January 1, 2022, should be dismissed based on the release and argues that the fact that Ataeva does not contest any of its authority demonstrates the strength of its argument.  Id. at 2-4.  Experian argues that Ataeva contends that the release may have been obtained through fraud, but that its Counterclaims do not allege any fraud.  Id. at 4-5.  Experian argues that Ataeva relies on the TAPS Second Amendment for allegations that the release resolved the earlier Dispute it "cannot both rely on the amendment and claim it was all fraud."  Id. at 5.  A fraudulent inducement claim, Experian contends, would also be subject to Rule 9(b), a standard that the Counterclaims do not meet.  Id.  Experian argues that the Counterclaims intentionally do not allege fraud because such fraud would render the TAPS Second Amendment void, and would reinstate the original Agreements with payment terms favorable to Experian.  Id.  Experian argues that the Release does not only apply to TAPS as Ataeva contends because in its Counterclaims Ataeva alleges "that it executed the Release 'after it became aware of Experian's underpayment under the Terms of the Agreements,'" clearly referring to both Agreements, an allegation it cannot now disown.  Id. at 6.

Experian reiterates its argument that the claims relating to "other" Experian customers must be dismissed because Ataeva does not dispute that it failed to comply

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 8:24-cv-02254-CAS (JDEx) | Date | February 3, 2025 |
|---|---|---|---|
| Title | Experian Information Solutions Inc. v. Ataeva, LLC | | |

with the notice-and-cure provision or with the Escalation Process for any customer other
than the Three Noticed Customers.  Id. at 7.  Experian argues that Ataeva is wrong to
contend that notice for three customers puts Experian on notice for every customer.  Id.
Experian argues that Ataeva was not required to serve dozens of notices, but that it was
required "at a minimum, to identify which customers for which Experian purportedly
failed to properly pay royalties and articulate a good faith basis for that alleged
underpayment."  Id. at 8.  Experian argues that because whether the Agreements have
been terminated is in dispute, the notice-and-cure provisions remain binding.  Id.
Experian argues that the Ataeva's obligation to comply with the Escalation Process
survives any purported termination.  Id. at 11.

Experian contends that Ataeva does not state a plausible claim with regard to other
customers because it "affirmatively alleges that it is 'unaware' of other breaches," which
is alone sufficient to defeat the claim.  Id.  Ataeva also cannot dispute, Experian argues,
that its allegations are based only on information and belief or that it can only name one
other customer.  Id.  Experian argues that Ataeva is incorrect that its information and
belief pleading is sufficient because Experian possesses the information about its efforts
to hide its uses of the Software, and contends that the Ninth Circuit has warned against
overreading Park, the case on which Ataeva relies.  Id. at 13.  Experian argues that
Ataeva's argument is undermined by the fact that for the Three Noticed Customers,
Ataeva had sufficient information to make out their claims.  Id.  Experian contends that
"Ataeva never alleges—and the exhibits it cites do not show—that Ataeva ever requested
Experian provide supporting documentation as to any other customer."  Id.  Experian
argues that Ataeva cannot give notice for certain breaches and then finding that Experian
did not produce additional, unrequested information, rely on information and belief to
assert additional breaches.  Id.

Next, Experian reiterates its argument that Ataeva cannot bring a copyright
infringement claim for the period during which the Agreements were in effect because it
did not allege that Experian exceeded the scope of its exclusive license and Ataeva does
not dispute that its claim can only survive if this were the case.  Id. at 14.  Experian
argues that Ataeva attempts to reverse the burden, but "Ataeva must allege sufficient
facts, taken as true, that show Experian acted outside the scope of the license."  Id. at 16
(emphasis omitted).  With regard to the issue of internal use of the Software, Experian
argues that the allegation is based only on information and belief and that the language of
the Agreements as well as the Counterclaims support the notion that Experian was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 8:24-cv-02254-CAS (JDEx) | Date | February 3, 2025 |
|---|---|---|---|
| Title | Experian Information Solutions Inc. v. Ataeva, LLC | | |

allowed to use the software in its own operating environment.  Id. at 17.  Experian argues that Ataeva also attempts to shift the burden to Experian for this claim.  Id.  Experian argues that "[m]erley identifying the potential limitations of the license is not a substitute for factual allegations plausibly showing that the defendant actually exceeded those limitations."  Id. at 18.

Experian reiterates its contention that Ataeva fails to state a UCL claim.  Id.  Experian contends that Ataeva argues that the fraudulent concealment is more than just breach of contract, but "does not allege any fraudulent concealment by Experian whatsoever, let alone enough for Rule 9(b)."  Id.  Experian argues that though Ataeva in opposition argues that Experian acted in bad faith and engaged in obfuscation, the Counterclaims allege only that the same failure to provide information was a breach of contract.  Id.  Dismissal is warranted, Experian argues, because "the Counterclaims contain zero allegations asserting that equitable relief under the UCL is necessary because Ataeva lacks an adequate remedy at law."  Id. at 19.

Finally, Experian argues that Ataeva should not be given leave to amend.[1]  Id. at 20.

///

---

[1] On January 31, 2025, Ataeva filed a motion for leave to file amended Counterclaims.  Dkt. 87.  In its proposed Amended Counterclaims attached thereto, Ataeva seeks to clarify several points in its original Counterclaims, in response to arguments made in Experian's reply in support of its motion to dismiss.  Dkt. 87-1 ("Amended Counterclaims").  First, in response to Experian's argument that Ataeva admitted in its Counterclaims that the TAPS Second Amendment resolved disputes under "the Agreements," Ataeva seeks to amend the first sentence of Paragraph 33 to read, "[i]n 2020, Ataeva became aware of certain Experian underpayments under the terms of the TAPS Agreement and TAPS First Amendment."  Amended Counterclaims ¶ 33.  Ataeva seeks to amend Paragraph 60 and insert Paragraphs 62 and 63 to provide "additional evidence regarding its identification of the larger scope of Experian's misclassification or concealment of revenue during the escalation many months before Experian's suit."  Dkt. 87.  Finally, Ataeva seeks to add Paragraphs 75-77 to describe further breaches and escalation of the dispute.  Amended Counterclaims ¶¶ 75-77.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 8:24-cv-02254-CAS (JDEx) | Date | February 3, 2025 |
|---|---|---|---|
| Title | Experian Information Solutions Inc. v. Ataeva, LLC | | |

### B.    The Court's Conclusions

#### 1.    Potentially Released Claims

With regard to Experian's first argument that all claims prior to December 31, 2021 were released, the Court looks to the language of the relevant Agreement. The TAPS Second Amendment provides that the "Dispute" is "[t]he parties' contentions." The Agreement further defines the parties contentions as: (1) for Ataeva "that it terminated the Agreement on September 12, 2020, based on Ataeva's contention that Experian had not paid all required fees under the Agreement" and (2) for Experian "that it paid all required fees under the Agreement, it cured any purported breach, and that Ataeva failed to fulfill its obligations under Section 3.3 of the Agreement." TAPS Second Amendment ¶ 1. Settlement of the Dispute, per the terms of the Agreement, "releases, discharges, and settles, fully and finally, any and all claims, whether known or unknown, which arise out of, or relate in any manner to the Dispute as further outlined in paragraph 18 of this Amendment." Id. Experian agreed to pay Ataeva $434,506.44 "which sum the parties agree constitutes payment in full for the accrued and unpaid Fees through the Amendment Effective Date," which is defined as December 31, 2021. Id.

The TAPS Second Amendment also provides that it "hereby releases, discharges and settles, fully and finally, all claims, demands, rights, actions or causes of action, liabilities, charges, complaints, grievances, obligations, promises, controversies, debts, costs, penalties, fees, damages, losses, obligations, judgments, suits, matters, and issues of any kind or nature whatsoever, whether known or unknown, contingent or absolute, disclosed or undisclosed, material or immaterial, matured or unmatured ("Claims"), which have arisen, could have arisen, arise now, or hereafter arise out of, or relate in any manner to, the Dispute (the "Released Claims") against the other party or any of its direct or indirect parent entities, subsidiaries or other Affiliates ...." Id. ¶ 18. This provision, which "further outline[s]" the release in ¶ 1, also provides the right to enforce the Agreement after the Amendment Effective Date.

The Court concludes that the language of the TAPS Second Amendment makes clear that it provides for a release of all claims relating to the Dispute. Because Ataeva's contention defining the Dispute in the TAPS Second Amendment was broadly that "Experian had not paid all required fees under the Agreement" and the release resulted in a settlement of "any and all claims, whether known or unknown, which arise out of, or relate in any manner to the Dispute as further outlined in paragraph 18 ..." the Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 8:24-cv-02254-CAS (JDEx) | Date | February 3, 2025 |
|---|---|---|---|
| Title | Experian Information Solutions Inc. v. Ataeva, LLC | | |

concludes that this included any claims of underpayment for the TAPS product before the Amendment Effective Date. Accordingly, the Court finds that to the extent Ataeva is stating a claim for breach due to underpayment for the TAPS product arising before January 1, 2022, that claim must be dismissed because it is precluded by the TAPS Second Amendment.

The Court also concludes that on this record it is not able to determine whether claims relating to underpayment for Yield Metrics "arise out of, or relate in any manner to the Dispute," and thus cannot conclude at this stage whether such claims are also precluded by the release in the TAPS Second Amendment. TAPS Second Amendment ¶ 1.

Ataeva also argues that Experian "obtained the TAPS Second Amendment Release through fraud" because it warranted that it had no knowledge of additional claims under the Agreement, when it was already hiding revenues from Bank of America that should have been disclosed under the TAPS Agreement and thus the Release does not govern. Opp. at 8. Experian replies that Ataeva does not allege the release was procured by fraud in its Counterclaims, and that it relies on the TAPS Second Amendment therein "for its allegations that the Release addressed Experian's 'underpayment and to prevent further disputes.'" Reply at 5. Thus, Experian argues that Ataeva cannot both rely on the TAPS Second Amended and claim that it was procured through fraud.

The Court concludes that because Ataeva did not include any allegation of fraud in its Counterclaims as to how the release was procured, it cannot depend on fraud as a basis for invalidating the release at this stage. In order to rely on an allegation of fraud, Ataeva would have to plead it in its Counterclaim. Ataeva is accordingly given leave to add this claim.

        2.    <u>Claims Relating to Alleged Non-Noticed Breaches</u>

The Court finds that the claims for breach regarding customers other than the Three Noticed Customers are sufficiently pled and that the determination of whether Ataeva failed to properly comply with the notice-and cure procedures cannot be made at this stage.

The Court concludes that the claims regarding other customers are sufficiently pled. The Ninth Circuit has established that "'The Twombly plausibility standard …

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 8:24-cv-02254-CAS (JDEx) | Date | February 3, 2025 |
|---|---|---|---|
| Title | Experian Information Solutions Inc. v. Ataeva, LLC | | |

does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where belief is based on factual information that makes the inference of culpability plausible.'" Soo Park v. Thompson, 851 F.3d 910, 928 (9th Cir. 2017) (quoting Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (citations and quotation marks omitted). When the relevant facts are known only to the defendant, the Ninth Circuit has deemed relaxing pleading requirements appropriate.  Concha v. London, 62 F.3d 1493, 1503 (9th Cir. 1995).

The Court concludes that a relaxed pleading standard should apply in this circumstance and that Ataeva has satisfied such a standard.  Ataeva details the alleged breaches related to the Three Noticed Customers.  Counterclaims ¶¶ 38-50.  Ataeva then alleges "[on] information and belief," five ways that Experian breaches the Agreements with regard to other customers: (1) that "Experian applies the same incorrect calculation to its other customers that Experian has used with respect to Credit Karman and Visa"; (2) that "as with Bank of America, Experian provides the Software, Software documentation, and Software data to its customers without disclosing to Ataeva anything at all, or the customers, nature of the customers and uses, revenue or number of records as required under the Agreements"; (3) that Experian does not "pay the royalties owed under the Agreements as to these customers"; (4) that "Experian made TAPS available in their Premier Summarized Credit Statistics$^{SM}$ and in their Experian Audiences"; and (5) that "Experian is using the Software in its own or its corporate affiliates' service known as Credit Match."  Id. ¶¶ 51-51.  Ataeva has pled that it does not have access to sufficient information to identify these breaches more clearly at this stage, while Experian does.  Id. ¶ 60 (alleging that "Ataeva repeatedly pressed Experian for full disclosure of the information due under the Agreements to reveal the scope of the revenues and uses of the Software so that the parties could agree to and correct Experian's underpayment").

Experian takes issue with this, as it argues Ataeva had sufficient facts to plead its claims against the Three Noticed Customers without relying on information and belief.  Reply at 13.  However, the Court notes that Ataeva alleges that it became aware of the three noticed breaches through special circumstances.  Counterclaims ¶ 36.  Ataeva alleges that Bank of America approached Ataeva directly with an inquiry about a product that Ataeva believed Experian was no longer providing to Bank of America, revealing that Experian had been providing the product without alerting Ataeva and exposing the breach.  Id.  Ataeva alleges that it became aware of "even more serious lapses in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 8:24-cv-02254-CAS (JDEx) | Date | February 3, 2025 |
|---|---|---|---|
| Title | Experian Information Solutions Inc. v. Ataeva, LLC | | |

Experian's reporting and underpayments under the Agreements" and that the lapses "had been hidden from Ataeva for years and came to light only through inadvertent admissions made by Experian to Ataeva while Ataeva was providing services under the Agreements." Id. ¶ 37. Without this reveal, Ataeva alleges it would have remained unaware of what Software was being provided by Experian without compensation, information peculiarly within Experian's control. Accordingly, the Court concludes that Ataeva has sufficiently pled its claims with regard to other customers yet to be identified, and that these claims may go forward insofar as they are not precluded by the Release as described above.

With regard Experian's argument that these other claims are improper because Ataeva failed to adhere to the Agreements' notice-and-cure provisions or the Escalation Process, the Court concludes that this argument cannot be decided independent of a determination on the continuing validity of the Agreements, and thus that the claims are not properly dismissed on this basis. The Agreements contain a provision governing "Termination for Cause," which requires:

> If either Party materially breaches this Agreement and fails to cure such breach within thirty (30) days after receipt of a notice of breach from the other Party, then the non-breaching Party may, without limiting any other rights or remedies under this Agreement, by giving notice to the breaching Party, terminate this Agreement, in whole or in part, as of the termination date specified in the notice.

TAPS Agreement § 9.3; YM Agreement § 9.3. The parties in this case dispute whether the Agreements were terminated, but Ataeva contends that it provided notice of the Three Noticed Breaches and then the Agreements terminated on October 18, 2024. Opp. at 12. Thereafter, Ataeva contends, it was not required to continue noticing breaches pursuant to this provision, as the Agreements were terminated, and it could raise additional breaches in litigation without first noticing them. Id.

While Experian cites case law for the proposition that a notice provision is meant to ensure that parties have an opportunity to cure breaches at issue before the parties resort to potentially unnecessary litigation, the Court finds that this is inapposite. Reply at 8. Experian had notice and the opportunity to cure the Three Noticed Breaches, a matter Experian does not dispute. Counterclaims ¶ 63. Experian chose not to cure, and instead brought an action in this Court. Id. ¶ 66. The Court concludes that though it is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 8:24-cv-02254-CAS (JDEx) | Date | February 3, 2025 |
|---|---|---|---|
| Title | Experian Information Solutions Inc. v. Ataeva, LLC | | |

true that notice-and-cure provisions are meant to prevent an unnecessary resort to litigation, Ataeva did notice three breaches, Experian chose not to cure pursuant to the Agreements' established procedures, and Experian itself chose to litigate. The Court finds that the authority on which Experian relies is applicable in situations where no breach has been properly noticed, but here three breaches were noticed. Reply at 9-10. For example, Experian relies on In re Ingenu, Inc., and argues that there "because the court found that the plaintiff did not establish any 'noticed breach[], it could not 'rely on alleged breaches not included in its Termination Letter to support its attempt to terminate the [agreement].'" Id. at 10 (citing No. 20-03779, 2024 WL 3634243, at *39 (Bankr. S.D. Cal. Feb. 13, 2024)). Ataeva is not relying on these other alleged breaches in order to terminate the agreement. Rather, it is stating a claim for breach of contract with regard to these breaches, arguing that the agreement was already terminated by the breaches it had noticed previously.

In addition to establishing that the purpose of a notice-and cure provision is to avoid litigation, this Court has said that the purpose is also to "to provide the breaching party an opportunity to cure the breach before … termination of the contract." IP Glob. Invs. Am., Inc. v. Body Glove IP Holdings, LP, No. 17-cv-06189-ODW-AGR, 2018 WL 5983550, at *5 (C.D. Cal. Nov. 14, 2018), amended, No. 17-cv-06189-ODW-AGR, 2019 WL 121191 (C.D. Cal. Jan. 7, 2019). If the Agreements were already terminated, as Ataeva argues, a central purpose of the notice-and-cure provision would not be served by requiring notice of the additional alleged breaches. Because whether the Agreements were terminated following the Three Noticed Breaches is a central issue to the case and is key to whether Ataeva was required to comply with the notice-and-cure provision for further breaches, the Court determines that the issue is not properly decided at this stage.

The Court concludes the same with regard to the Escalation Procedures. As Ataeva argues, the Agreements only specify that these and other procedures survive termination when Experian has terminated the Agreements, but elects to continue all sublicenses granted to customers and all binding contracts with customers, in which case, "provisions of this Agreement applicable relating to the determination and payment of, and resolutions of disputes regarding, the Fees (including, for example, Sections 5.6 and 5.7 and Articles 8 and 12), will also survive in case of an election under this Section 9.6(ii) as to such continued license." TAPS Agreement § 9.6(ii); YM Agreement § 9.6(ii). Article 8, the Escalation Procedures provision, therefore survives specifically when Experian terminates under certain conditions. The Agreements are silent on the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 8:24-cv-02254-CAS (JDEx) | Date | February 3, 2025 |
|----------|--------------------------|------|-------------------|
| Title | Experian Information Solutions Inc. v. Ataeva, LLC | | |

provisions' survival if the Agreements are terminated under other circumstances. Though the provision does not specify whether it includes the provision requiring notice and opportunity to cure (§ 9.3), the Court concludes that "resolutions of disputes" likely contemplates this provision as well, suggesting that the obligation of notice would endure if the contract were terminated in these specific circumstances, which are not present here. This further supports the Court's conclusion that the Court cannot determine whether dismissal of these claims would be proper for failure to notice the additional breaches, when it has not determined the question of whether the Agreements were terminated as a result of the Three Noticed Breaches.[2]

> 3.    Alleged Copyright Infringement by Exclusive Licensee

The Court next turns to Experian's contention that it cannot be liable for copyright infringement during the time it was the exclusive licensee of the Software, because only the licensee can sue for infringement and because if Ataeva as the copyright owner does sue, the issues would be governed by contract law. Mot. at 15-16. Experian was granted an exclusive license to the Software. TAPS Agreement § 2.3; YM Agreement § 2.3. The Ninth Circuit has held that whether something is a copyright or contract claim turns on the scope of the license granted, as "[g]enerally, a 'copyright owner who grants a nonexclusive license to use his copyrighted materials waives his right to sue the licensee for copyright infringement' and can only sue for breach of contract." Sun Microsystems, Inc. v. Microsoft Corp., 188 F.3d 1115, 1121 (9th Cir. 1999), abrogated on other grounds by Perfect 10, Inc. v. Google, Inc., 653 F.3d 976, 979–80 (9th Cir. 2011) (quoting Graham v. James, 144 F.3d 229, 236 (2d Cir.1998) (citing Peer Int'l Corp. v. Pausa Records, Inc., 909 F.2d 1332, 1338–39 (9th Cir.1990))). However, "if a license is limited in scope and the licensee acts outside the scope, the licensor can bring an action for

---

[2] At the hearing, the parties discussed the audit provisions contained in § 5.7 of the Agreements. Experian contended that the audit provisions, if invoked, would have provided Ataeva with the information it would need to properly notice and allege the additional breaches under the Agreements, and Ataeva argued that while it could leverage these provisions, it is now seeking the same information through civil discovery. In light of the fact that Ataeva contends that the Agreements are terminated, it appears it cannot avail itself of the audit provisions in the Agreements.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 8:24-cv-02254-CAS (JDEx) | Date | February 3, 2025 |
|---|---|---|---|
| Title | Experian Information Solutions Inc. v. Ataeva, LLC | | |

copyright infringement." Id. (citing S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081, 1087 (9th Cir.1989); 3 Nimmer on Copyright, § 10.15[A] (1999)).

Here, the parties established limitations on the license in the terms of the Agreements. TAPS Agreement § 2.2; YM Agreement § 2.2. Ataeva alleges that "whether Experian's pre-termination activities fell within or outside the scope of the Agreements' licenses is a question of fact," and thus deciding this question on a motion to dismiss is "premature." Opp. at 16. In its Counterclaims, Ataeva alleges that "Experian distributed Software to customers without seeking to include those customers under any license provided for in the Agreements, by failing to provide supporting documentation as required by Section 4.5 of the Agreements, and by failing to list any revenue or provide any royalties under the Agreements." Counterclaims ¶ 88. It is not clear that any of these alleged activities exceeds the scope of the license as defined by the Agreements, which place limits that establish that Ataeva retains ownership of the copyright despite the license, that Experian must reproduce Ataeva's identifications appearing on the Licensed Materials, that Experian may not allow third parties to access or use the Source Code, and that Experian has a limited right to modify the product. TAPS Agreement § 2.1; YM Agreement § 2.1. The Agreements also grant the license "solely with respect to United States Consumer Data." TAPS Agreement §2.2; YM Agreement § 2.2. The Court finds that Ataeva's allegations of impermissible distribution, lack of documentation, and failure to provide royalties are issues relevant to other portions of the contract, for which Ataeva has separately stated claims of breach, rather than issues relevant to the limitations of the license.

Accordingly, the Court determines that Ataeva has not stated a claim that Experian exceeded the limitations on the license, which would be the only bases for a copyright infringement claim. Otherwise, the claims are properly considered contract claims. The Court finds that this claim, insofar as it pertains to Experian exceeding the scope of the license during the time the parties agree it was the exclusive licensee, must be dismissed, with leave to amend.

4.    Alleged Copyright Infringement Through Internal Use

Experian's fourth argument that the claims should be narrowed is that Ataeva cannot state a copyright claim for Experian's internal use of the Software and the use by Experian's affiliates because this use is authorized by the terms of the Agreements. Mot. at 18. Pursuant to the Agreements, Experian was permitted to "use, copy, amend,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 8:24-cv-02254-CAS (JDEx) | Date | February 3, 2025 |
|---|---|---|---|
| Title | Experian Information Solutions Inc. v. Ataeva, LLC | | |

modify, bundle, enhance, maintain, add to and upgrade the Licensed Materials and the Source Code and use and/or integrate the same with other computer software, Experian Data and other materials for any purpose." TAPS Agreement § 2.1(i); YM Agreement § 2.1(i). Ataeva alleges "Experian infringed when it made TAPS available in their Premier Summarized Credit Statistics℠ and in their Experian Audiences. And … on information and belief, Experian is using the Software in Credit Match. Each of these instances involve [use] of the Software without any attempt to do so under the license of the Agreements. As a result, Experian's distributions of the Software were not licensed, including its distributions to its customers. Thus it infringed Ataeva's copyrights." Based on § 2.1(i) of the Agreements, the Court understands these alleged uses in Experian's internal products to be permitted by the language of the contract permitting Experian to "use … the Licensed Materials … or integrate the same with other computer software, Experian Data and other materials for any purpose." TAPS Agreement § 2.1(i); YM Agreement § 2.1(i). Ataeva argues that it is not clear what Experian means by "internal use" in its motion, but that "it provides one example—Credit Match—which is a service for which customers pay Experian directly, relying on the Software and exposing its output data (and for which it has neither reported revenue nor paid royalties)." Opp. at 17. Ataeva contends that "[t]his is plainly insufficient to show as a pure matter of law that the Agreements license Experian the right to use Software without reporting, and for free, so long as Experian Charges its fees to consumers directly." Id. at 17-18. The Court finds that, though it is not clear from the language of the Counterclaims, based on Ataeva's opposition, it is attempting to state a copyright infringement claim on the basis of underreporting and underpayment for use of the Software. As explained with regard to the prior basis for dismissal, this is a contract claim, not a claim based on the scope of the license that can be brought in copyright. Accordingly, the claim for infringement on this basis is dismissed, with leave to amend.

To the extent that this claim is based on such use after the alleged termination, Counterclaims ¶ 92, the Court concludes that a determination of the propriety of this claim also depends on a determination of whether the Agreements have been terminated, which the Court does not decide at this stage.

5.      UCL Claim

Finally, Experian contends that Ataeva's UCL claim must be dismissed because it is duplicative of the contract claims. This Court has concluded that "[a] breach of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 8:24-cv-02254-CAS (JDEx) | Date | February 3, 2025 |
|---|---|---|---|
| Title | Experian Information Solutions Inc. v. Ataeva, LLC | | |

contract may form the basis for UCL claims only if it also constitutes conduct that is unlawful, unfair, or fraudulent." Conder v. Home Sav. of Am., 680 F. Supp. 2d 1168, 1176 (C.D. Cal. 2010) (quoting Puentes v. Wells Fargo Home Mtg., Inc., 160 Cal. App. 4th 638, 645 (2008)) (internal quotations and emphasis omitted).  "Because [the UCL] is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." Boschma v. Home Loan Ctr., Inc., 198 Cal. App. 4th 230, 252 (Cal. Ct. App. 2011) (internal quotation marks and citation omitted).

Ataeva alleges that Experian violated the fraudulent prong of the UCL.  Opp. at 19 (quoting Counterclaims ¶ 104).  California courts have said that omissions can serve as the basis of a claim under the fraudulent prong of the UCL.  In re Carrier IQ, Inc., 78 F. Supp. 3d 1051, 1112 (N.D. Cal. 2015).  For an omission to provide this basis, "the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obligated to disclose." Daugherty v. Am. Honda Motor Co., 144 Cal. App. 4th 824, 835 (2006).

Here, Ataeva is contending that Experian concealed "'uses and revenue from the Software for the purpose of preventing Ataeva from discovering the underpayments.'" Opp. at 19 (quoting Counterclaims ¶ 104).  Ataeva argues that this alleged "fraudulent concealment" goes beyond breach of contract. Id. at 19-20.  Ataeva goes on to argue that Experian engaged in "bad faith and obfuscation during the parties' negotiations" and that "Experian continues to engage in this misconduct even after Termination of the Agreements." Id. at 20.  Because these additional allegations were not raised in the Counterclaims (and are not presented explicitly in the cited paragraphs), the Court does not consider them for the purposes of this analysis.  Experian argues that "Ataeva does not allege any fraudulent concealment by Experian whatsoever, let alone enough for [the higher fraud standard under] Rule 9(b)." Reply at 18.

The Court finds that Ataeva has pled its fraud claim with sufficient particularity pursuant to Rule 9(b).  The Rule 9(b) standard is "relaxed with respect to matters within the opposing party's knowledge." Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993); see also Aquamen Ent., LLC v. Pigmental, LLC, No. CV 17-58-GW(GJSX), 2017 WL 7806619, at *8 (C.D. Cal. May 8, 2017) ("For example, in cases of corporate fraud, plaintiffs will not have personal knowledge of all of the underlying facts.").  In such instances, "the particularity requirement is satisfied if the allegations are accompanied by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 8:24-cv-02254-CAS (JDEx) | Date | February 3, 2025 |
|---|---|---|---|
| Title | Experian Information Solutions Inc. v. Ataeva, LLC | | |

a statement of facts upon which the belief is founded." <u>Galaxia Elecs. Co. v. Luxmax, U.S.A.</u>, No. LA-CV-1605144-JAK-GJSx, 2023 WL 2347085, at *22 (C.D. Cal. Feb. 1, 2023). Here, the Court concludes that Ataeva has sufficiently alleged its claim via its allegations that Experian failed to report and concealed "uses and revenue from the Software for the purpose of preventing Ataeva from discovering the underpayments," and that Experian has refused to provide documentation of "the scope of its revenue and uses" to resolve the dispute as required by the Agreements. Counterclaims ¶¶ 104, 60-62. Because Experian, pursuant to the Agreements, was required to disclose to Ataeva its uses and revenue from the Software, omission of such revenue and uses from its disclosures can form the basis of a UCL claim under the fraudulent prong. Accordingly, the Court finds that Ataeva states a UCL claim distinct from its contract claim and that dismissal of this claim would be improper.

## V.   CONCLUSION

In accordance with the foregoing, the Court **GRANTS** Experian's motion to dismiss Ataeva's first claim for relief for breach of contract in so far as it relates to the TAPS product and breaches arising before January 1, 2022, without leave to amend.

The Court **GRANTS** Ataeva leave to make the amendments for which it sought leave in its January 31, 2025 filing [87]. Further, in connection with breaches alleged prior to January 1, 2022, the Court **GRANTS** Ataeva leave to amend its Counterclaims to allege fraud as a defense to the application of the release in the TAPS Second Amendment.

The Court **GRANTS** Experian's motion to dismiss Ataeva's second claim for copyright infringement as it relates to pre-purported termination conduct, with leave to amend.

The Court **DENIES** Experian's motion to dismiss Ataeva's UCL claim.

IT IS SO ORDERED.

|  | 00 | : | 45 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |